## ALDERMAN v LAKEWOOD (city)

Ohio Appeals, 8th Dist, Cuyahoga Co

No. 11832. Decided June 22, 1931

Martin A. McCormack, Cleveland, for plaintiff.

Carl B. Webster, Cleveland, for defendant.

**VICKERY, J.**

Now the question presented is whether the evidence in this case was of such a nature as to show that there was a trafficking in liquor. It was argued by defendant's counsel in the court below that this was a party and that the guests brought the liquor into this house. Well, if that is so, every person who brought liquor there was guilty of the crime of transporting liquor.

The plaintiff in error admits that she procured the barrel of beer that was on tap in the basement of the house. The officers who watched the place saw at one time a beer pump carried into the house and this pump was found on the premises. It seems that there was quite a trafficking in liquor. Whether it was sold or given away, it was surely there for an illegal purpose. If the woman was having frequent parties there, it was hardly likely that the guests brought their own liquor. They might as well have drunk it at home and thus avoided the risk of arrest in transporting it. There would not be much purpose in having these hilarious parties unless there was some reason for having them in this particular place.

As already stated there was no apparent means of livelihood by the woman, nor for that matter by her family. The presumption would naturally be that if she had these frequent parties and one cannot read the record without coming to the conclusion that she did have them, it must have

been with a purpose in mind. True, she says she attended a party in Detroit some time before, that she was returning the party and the Detroit people came to this party and the intimation was that they brought a part of the liquor along. However, it shows that a large amount of liquor was consumed in this house and plaintiff in error was the occupant of the house and she admits that she owned the barrel of beer. The bottles would hardly have been brought into the house unless it was for purpose. Apparently the liquor was there, not for the purpose the plaintiff in error would have us believe, but for the purpose of dispensing it to her visitors and the whole situation was beyond any question a situation which the officers might well have presumed to be a trafficking in liquor.

A large part of the argument of defendant's counsel was that this was a bona fide private residence but under the decision in many cases and particularly in the case of City of Cleveland v Joseph Nagle, decided June 10, 1931, in the Supreme Court, which was in accordance with many decisions of this court prior to that time, reversing the judgment of this Court of Appeals and affirming that of the Municipal Court,— and to justify the writer of this opinion he must say that he did not agree with the majority opinion in the Nagle case, but wrote a minority opinion which was later adopted by the Supreme Court,—the amount of liquor surrounding the investigation of the home by the raiding officers, was such that it had lost its character of a bona fide residence and whether the officers had a warrant or not, would not have made much difference. As already stated, there was much time spent by defendant's counsel below in his argument as to the awful violation of the rights of a home owner by the invasion of a private home even with a search warrant, on the theory that bona fide residences shall be immune from search and seizure. But the majority of this court thinks that the warrant was properly issued; but aside from that the situation was such that it was not necessary to have a search warrant, inasmuch as the house had lost its character as a private residence, because of the numerous violations of the law and because such a quantity of liquor was found in the place that it would not be conducive to good judgment to have such things passed over lightly and that persons cannot make their homes a rendezvous for drinking and carousing and then claim the benefits of a private home.

The majority of this court think that the court was right in holding as it did and that the evidence warranted a conviction.

There being no error for which the judgment could be reversed, the majority of the court think and therefore hold that the judgment should be affirmed.

WEYGANDT, J, concurs.

LEVINE, PJ, dissents.